# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KIMBERLY A. STARCHVILL,      )
     )
         Plaintiff,      )
     )      No. 16 C 5713
         v.      )
     )
THOMAS DART, in his individual      )      Judge Thomas M. Durkin
and official capacities as Sheriff      )
of Cook County, and COOK COUNTY,      )
     )
         Defendants.      )

## MEMORANDUM OPINION & ORDER

Plaintiff Kimberly A. Starchvill brings this lawsuit against defendants Cook County and Thomas Dart, in his individual and official capacities as Sheriff of Cook County, for sex discrimination, disability discrimination, and interference with Family and Medical Leave Act ("FMLA") rights. Currently before the Court is defendants' motion for summary judgment (R. 28). For the following reasons, the Court grants defendants' motion.

## Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013).

To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Starchvill began working as a Deputy Sheriff for the Cook County Sheriff's Office ("CCSO") in 1998. R. 38 ¶¶ 1, 4 (Starchvill's response to defendants' Local Rule 56.1 Statement of Material Facts). At various times during her employment, Starchvill applied for and received FMLA benefits for migraine headaches. *Id.* ¶ 4. To be eligible for FMLA leave, an employee must have at least 1250 hours of service during the previous 12-month period. 29 U.S.C. § 2611(2)(A)(ii). Starchvill testified at her deposition that defendants never discussed reasonable accommodations to alleviate the frequency of her migraines or addressed changes to her work schedule based on her migraines. R. 44 ¶ 64 (Defendants' response to Plaintiff's Local Rule 56.1 Statement of Additional Facts). As of September 21, 2012, Starchvill had not had disciplinary action of any kind within the last 18 months. *Id.* ¶ 55.

On January 3, 2013, the CCSO filed a Merit Board Complaint against Starchvill. R. 38 ¶ 7. The Merit Board Complaint alleged that Starchvill violated CCSO General Orders regarding attendance. *Id.* ¶ 8. It stated that she was absent from work on June 1, 14, 17, 21, 22, 23, 25, and 28, 2010 and on July 6, 7, 9, 12, 15,

2

16, 19, 20, 21, 2010, and that she was absent from work for 58 days from June 29, 2012 through September 20, 2012. *Id.* The parties dispute whether the Merit Board Complaint contained inaccuracies about Starchvill's disobeying an order to appear on September 4, 2012 and Starchvill's abandonment of the workplace on certain dates. R. 44 ¶¶ 53-54. The summary judgment record does not make clear how the January 2013 Merit Board Complaint against Starchvill was processed or resolved. But Starchvill's attendance issues persisted.

On March 29, 2013, a lieutenant in the CCSO sent Starchvill a written memo titled "Affirmative Attendance Counseling." R. 38 ¶ 36 (citing R. 30-13 at 103). The written attendance counseling form stated that Starchvill "may have developed a pattern of abuse or misuse of Medical Time." R. 30-13 at 103. It stated that Starchvill had taken medical time off on eight occasions in March 2013, resulting in four days of no-pay status. *Id.* The memo advised Starchvill that if her misuse of medical time continued, she could face disciplinary action or be placed on medical proof status. *Id.*

The CCSO placed Starchvill on medical proof status between May 3, 2013 and August 2, 2013, which meant that she needed to provide medical documentation each time she requested medical leave time. R. 38 ¶ 35. The CCSO placed Starchvill on medical proof status for an additional 90 days on November 5, 2013. *Id.* ¶ 37.

On March 11, 2014, Starchvill and the CCSO entered into a "Last Chance Agreement." *Id.* ¶ 9. The agreement provided that if Starchvill violated any of its

terms, an Amended Merit Board complaint would be filed and she would be terminated. *Id.* ¶ 10. One term of the Last Chance Agreement prohibited a "pattern of sick time abuse," which was defined to include using "three (3) or more sick days in conjunction with [Starchvill's] Regular Day Off ('RDO') during a rolling 120 day period." *Id.* On the last page of the Last Chance Agreement in bold type above the signature block was the following statement:

> I acknowledge that I have not relied upon any other representations or statements (either written or oral), nor been forced to enter into this agreement. I have been advised by virtue of this agreement that I have had adequate time to consider each and every term set forth in this agreement and that I consulted with an attorney of my choice . . . . I understand that a violation of this agreement will result in the reinstatement of Merit Board Complaint No. 1676 as well as additional charges in an amended/new Merit Board Complaint whereby the employer will seek my termination from the Sheriff's Office.

*Id.* ¶ 21. A union attorney advised Starchvill at the time she signed the Last Chance Agreement. *Id.* ¶ 22.

After signing the Last Chance Agreement, Starchvill took medical time on three days—Friday, September 5, 2014, Friday, November 7, 2014, and Monday, November 17, 2014—in conjunction with a regular day off during a 120-day period. *Id.* ¶ 11. At her deposition, Starchvill admitted that she was not on FMLA leave during these three days. *Id.* ¶ 24. Starchvill also admitted in interrogatory responses that she "was not approved for FMLA during the whole year of the Last Chance Agreement" and had "no other option but to use medical leave time" for absences. *Id.* ¶ 25; R. 44 ¶¶ 57-58. Sharon Little, the Deputy Director of the Sheriff's Human Resources Department, testified that her computer records showed

4

that Starchvill applied for FMLA in 2014 but did not have sufficient hours to qualify. R. 38 ¶ 27. But Starchvill now disputes that she was not entitled to FMLA leave on these three dates, citing an unauthenticated document titled "Cook County Sheriff's Office Employee Accrual Balances for Starchvill, Kimberly A" that shows an "FMLA Start Date" of "8/30/2014" and an "FMLA End Date" of "8/30/2015," with "0" hours of FMLA taken. *Id.*; R. 44 ¶ 38.

On February 11, 2015, Starchvill signed the CCSO's "Unauthorized Absence Notification Form—Employees With A Last Chance Agreement" notifying her and her union representative of a violation of the Last Chance Agreement. R. 38 ¶ 12. As required by the Last Chance Agreement, Starchvill went through a grievance process, and her grievance was denied. *Id.* ¶ 13.

An Amended Merit Board Complaint against Starchvill included her unauthorized absences on the dates listed in the original Merit Board Complaint as well as an additional seven days of unauthorized absences between March 14, 2013 and October 30, 2013. *Id.* ¶ 14. The Merit Board held a prove up hearing pursuant to the Last Chance Agreement, and issued a decision on April 28, 2016 terminating Starchvill effective July 24, 2015. *Id.* ¶ 15; R. 30-10 at 9. In her Last Chance Agreement, Starchvill "waive[d] any right to challenge or defend against [any] reinstated, amended or new Merit Board Complaint that seeks her termination." R. 44 ¶ 50. Based on that waiver, the Merit Board did not allow Starchvill to put on a defense at the hearing. *Id.* ¶ 51.

Starchvill filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 8 and 22, 2016. R. 38 ¶ 17. The EEOC issued a right to sue letter on March 14, 2016. *Id.* ¶ 18.

On May 31, 2016, Starchvill filed a complaint in this Court alleging a number of different discrimination and retaliation claims against defendants in connection with her employment and termination. R. 1. On September 12, 2016, this Court dismissed Count II of Starchvill's complaint (for discrimination under 42 U.S.C. § 1981) and defendant CCSO with prejudice. R. 17.

At Starchvill's deposition in this case, when asked about examples of men being treated more favorably, Starchvill testified that Dan Heslin, Brian Story, Thomas Caokley, David Brumfield, and David Medwed were not written up for being late on certain occasions, and Mike Park was given better hours even though Starchvill had more seniority. R. 38 ¶ 33; R. 44 ¶ 67. Starchvill did not know specific dates on which these individuals were not written up or given better hours. R. 38 ¶ 33. She also had no knowledge as to these individuals' leave and attendance issues. *Id.* ¶ 34. Starchvill further testified that she and others were told that they were assigned to work in non-courtroom positions because they were female. R. 44 ¶ 65.

Starchvill acknowledged at her deposition that she did not know the number of CCSO employees charged for violations of attendance policies, including any breakdown of male versus female employees charged. R. 38 ¶ 32. The data shows

that between 2013 and May 31, 2016, 22 CCSO employees were terminated for unauthorized absences. *Id.* ¶ 31. Of the seven of these 22 who were Deputy Sheriffs like Starchvill, two were male and five were female. *Id.*; R. 44 ¶ 39. But of the group of 22 as a whole, 13 were male and nine were female. R. 38 ¶ 31.

## Analysis

Starchvill's remaining claims against defendants allege: (1) violations of the FMLA, 29 U.S.C. § 2601 *et seq.* (Count V); (2) unlawful retaliation (Count VI); (3) violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count IV); (4) sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983 (Counts I and III); and (5) indemnification against Cook County (Count VII). R. 1. The Court first addresses threshold issues raised by Starchvill regarding alleged violations of the Illinois Counties Code, and then analyzes each of Starchvill's theories in turn.

## I.    Alleged Violations of Counties Code

Starchvill raises two threshold issues that she says create questions of material fact precluding summary judgment on her claims. R. 37 at 5-6. *First*, Starchvill points to a recent decision of the Illinois appellate court in *Taylor v. Dart*, 81 N.E.3d 1, 9 (Ill. App. Ct. 2017), *appeal denied*, 89 N.E.3d 764 (Ill. 2017). The court in *Taylor* determined that the Cook County Sheriff Department's Merit Board was not properly constituted as of October 2013 because it contained a member whose term of office did not meet the length required by Section 3-7002 of the Counties Code. *Id.* at 10. This meant that the Merit Board's decision terminating

the plaintiff was void and had to "be vacated and remanded for a hearing before a legally constituted Merit Board." *Id.* Starchvill maintains that her termination by a similarly improperly constituted Merit Board in 2016 is likewise "void," creating a "question of material fact, which precludes summary judgment" on her claims. R. 37 at 5. *Second*, Starchvill argues that the waiver contained in the Last Chance Agreement of Starchvill's right to put on a defense at the hearing with respect to the Amended Merit Board Complaint violates Section 3-7012 of the Counties Code, which states that at a termination hearing, "[e]xcept as otherwise provided in this Division . . . the accused deputy sheriff shall be afforded full opportunity to be heard in his or her own defense and to produce proof in his or her defense." 55 ILCS 5/3-7012. Starchvill claims that this issue likewise "precludes summary judgment." R. 37 at 5.

Both of these arguments are possible bases for challenging Starchvill's termination under the Illinois Counties Code—*i.e.*, state law claims that Starchvill did not plead in her complaint. *See* R. 1. But they do not create genuine issues of material fact as to her pending, federal claims. Starchvill's federal claims deal with whether the CCSO's termination decision was based on some form of discrimination or other violation of *federal* law—not whether the decision and prefatory proceedings were void or improper under *state* law. The Court now turns to Starchvill's pending federal claims.

## II.    FMLA Interference

To prevail on an FMLA interference claim, a plaintiff must establish: "(1) he was eligible for the FMLA protections; (2) his employer was covered by FMLA; (3) he was entitled to take leave under FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015). The sole basis for Starchvill's FMLA claim (as argued in her summary judgment opposition[1]) is that she was qualified for FMLA leave on September 5, 2014, November 7, 2014, and November 17, 2014, and that defendants interfered with her

---

[1]    Starchvill does not argue in her opposition, and therefore has waived, any FMLA violation or retaliation argument based on dates other than September 5, 2014, November 7, 2014, and November 17, 2014. In particular, Starchvill has waived her position in her interrogatory responses that she was improperly denied FMLA time in 2010, 2011, and 2013. *See* R. 38 ¶ 16; *see also, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in a meaningful way are waived."). This waiver moots defendants' argument that the statute of limitations bars any FMLA claim based on incidents prior to May 31, 2013.

If it were not moot, defendants' timeliness argument would be well-taken. The FMLA provides that actions for willful violations must be brought "within 3 years of the date of the last event constituting the alleged violation," and actions for non-willful violations must be brought "not later than 2 years after the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c). Starchvill filed her complaint on May 31, 2016. R. 1. Thus, even assuming willful violations, only claims for violations on or after May 31, 2013 are timely. Nor can Starchvill invoke a tolling doctrine. The Seventh Circuit has rejected an attempt to apply the "continuing violation" doctrine to FMLA violations. *See Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893, 899 (7th Cir. 2015) (rejecting argument for "a tolling rule that that would hold the limitations period in abeyance indefinitely and revive a stale denial-of-leave claim years later, when the employee is fired based in part on the contested absence," explaining that "[n]othing in § 2617(c)(1) supports such an open-ended tolling rule").

FMLA entitlement when they terminated her for unauthorized absences on these dates.

Defendants argue that they are entitled to summary judgment because Starchvill was neither eligible for nor entitled to FMLA leave on September 5, 2014, November 7, 2014, and November 17, 2014—the first and third elements of her FMLA claim. In support, defendants point to: (1) Starchvill's deposition testimony admitting that she was not on FMLA leave on these three dates (R. 38 ¶ 24); (2) Starchvill's admission in interrogatory responses that she "was not approved for FMLA during the whole year of the Last Chance Agreement" and had "no other option but to use medical leave time" (*id.* ¶ 25; R. 44 ¶¶ 57-58); and (3) the deposition testimony of the Deputy Director of the Sheriff's Human Resources Department Sharon Little that Starchvill applied for FMLA in 2014 but did not have sufficient hours to qualify (R. 38 ¶ 27).

To support her assertion that questions of material fact remain as to her entitlement to and eligibility for FMLA leave on these dates, Starchvill relies solely on the document titled "Cook County Sheriff's Office Employee Accrual Balances for Starchvill, Kimberly A" showing an "FMLA Start Date" of "8/30/2014" and an "FMLA End Date" of "8/30/2015." R. 38-1 Ex. 21. But this document does not create a genuine issue of material fact as to Starchvill's FMLA eligibility or entitlement. For starters, this document is unauthenticated, and authentication is required for a document to be considered on summary judgment. *See, e.g.*, *United Cent. Bank v. Mina Builders Inc.*, 2012 WL 527860, at *4 (N.D. Ill. Feb. 14, 2012) ("In ruling on a

motion for summary judgment, a court may consider any evidence that may be admissible at trial. Since this document is unauthenticated, it would not be admissible at trial; and, thus, this document will not be considered in ruling on Plaintiff's Motion for Summary Judgment.") (citing *Woods v. City of Chicago,* 234 F.3d 979, 988 (N.D. Ill. 2000)). Where "[n]o evidence in the summary judgment record casts doubt" on an issue except "unauthenticated documents," summary judgment is appropriate. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 579 (7th Cir. 2015).

In any event, this document does not decisively speak to whether Starchvill was entitled to or eligible for FMLA leave in the fall of 2014. It reflects "0" "FMLA Hours Used," as of "2/23/2015," which supports defendants' position that the system did not record Starchvill as taking FMLA leave in the fall of 2014. R. 38-1 Ex. 21. It also does not state that Starchvill was FMLA eligible during the dates in question, but simply reports the year's start and end dates. And it contains a disclaimer stating: "Disclaimer: Until all aspects of the timekeeping system are automated, for an official report of available time, please confirm available time with the CCSO Department of Personnel." *Id.* The closest evidence in the record to "an official report of available time"—*i.e.*, the deposition testimony of Little, the Deputy Director overseeing payroll time records—confirmed that Starchvill did not have sufficient hours to qualify for FMLA in 2014. R. 38 ¶ 27. Specifically, Little testified that Starchvill "applied for FMLA in 2014 . . . [a]nd she was not approved because

she did not have enough hours," "based upon the computer calculation." R. 30-12 at 53.

In sum, Starchvill has not set forth evidence creating a genuine issue of material fact on the issues of whether she was eligible for and entitled to FMLA leave on the three dates for which she was found to have violated the Last Chance Agreement and therefore terminated. *See Curtis*, 807 F.3d at 223 (elements of FMLA claim include eligibility for FMLA protection and entitlement to take leave under the FMLA). Summary judgment is therefore appropriate on Starchvill's FMLA claim.

## III. FMLA Retaliation

When deciding a motion for summary judgment on an FMLA retaliation claim, the Court asks "whether the record contains sufficient evidence to permit a reasonable factfinder to conclude that [the employer] fired [the employee] in retaliation for taking FMLA leave." *Mourning v. Ternes Packaging, Ind., Inc.*, 868 F.3d 568, 571 (7th Cir. 2017). The basic premise of Starchvill's FMLA retaliation claim is that she was entitled to FMLA leave on September 5, 2014, November 7, 2014, and November 17, 2014, and that her termination constituted retaliation against her for exercising her right to take FMLA leave on those dates. *See* R. 37 at 10.[2]

---

[2]    Although pleaded more broadly, this is the only basis for Starchvill's retaliation claim argued in Starchvill's summary judgment opposition. This means that Starchvill has waived any other bases for her claim. *See, e.g.*, *Cent. States*, 181 F.3d at 808.

"Defendants agree that if Starchvill had available FMLA leave time, she could have used the FMLA leave for those dates." R. 43 at 4. But, as set forth above, there is no genuine issue of fact as to whether Starchvill was FMLA eligible on September 5, 2014, November 7, 2014, and November 17, 2014. The undisputed evidence shows that she was not. There is therefore no evidence that would "permit a factfinder to conclude" that Starchvill was fired "in retaliation for taking FMLA leave." *See Mourning*, 868 F.3d at 571-72.

## IV. ADA Discrimination and Failure to Accommodate

### A. Statute of Limitations

Defendants say that certain of Starchvill's ADA discrimination and failure-to-accommodate claims are time-barred. Starchvill first responds that defendants forfeited their statute-of-limitations defense by failing to raise it in their answer. But as defendants point out, "the rule that forfeits an affirmative defense not pleaded in the answer (or by an earlier motion) is, [the Seventh Circuit has] ma[d]e clear, not to be applied rigidly." *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 436 (7th Cir. 2014). As a general matter, "the failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." *Id.* Here, like in *Garofalo*, Starchvill has suffered no harm because she had the opportunity to challenge defendants' statute-of-limitations argument "in [her] opposition briefs to the [defendants'] summary judgment brief." *See id.* The Court therefore declines to find the statute-of-limitations defense forfeited, and the Court addresses it presently.

"A plaintiff in Illinois . . . must file a charge of discrimination [under the ADA] with the EEOC within 300 days of some offending conduct." *Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) (citing 42 U.S.C. §§ 12117(a), 2000e-5(e)(1)); *accord Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) ("According to statute, a plaintiff in . . . Illinois must file a charge of discrimination [under the ADA] with the EEOC or equivalent state agency within 300 days after the 'alleged unlawful employment practice.'") (quoting 42 U.S.C. § 2000e–5(e)(1)). Starchvill filed her EEOC charge of discrimination on February 8, 2016, meaning that all ADA claims based on acts occurring more than 300 days earlier—*i.e.*, acts prior to April 15, 2015—are untimely. *See, e.g.*, *Teague*, 492 F. App'x at 683-84 ("the district court properly refused to consider the alleged discrimination," including "fail[ure] to accommodate her disability," "that occurred more than 300 days before Teague's EEOC filing."). And contrary to what Starchvill says, "refusal to accommodate is a discrete act—not an ongoing omission—and therefore the continuing violation doctrine does not apply." *Id.* Because, however, Starchvill's discrimination and failure-to-accommodate claims span the period through her termination on July 24, 2015 (R. 38 ¶ 15), it is clear that at least some of her ADA claims are timely.

**B.    Merits**

Starchvill raises claims for both discrimination based on disability and failure to reasonably accommodate her disability. The Court addresses each claim in turn.

**1.    Discrimination.**

To prevail on her ADA discrimination claim, Starchvill "must show that (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse job action against her because of her disability or without making a reasonable accommodation for it." *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). "To survive a motion for summary judgment, she must present the court with evidence that, if believed by a trier of fact, would establish each of the elements of her claim." *Id.*

As a threshold matter, "the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). Starchvill produces no evidence that she ever asked for an accommodation for her migraines. Her vague allegations in her deposition that defendants did not affirmatively offer to provide an accommodation for her migraines over an unspecified period of time (R. 44 ¶ 64) does not suffice.

Moreover, the Court "need not rest [its] decision on the fact that [Starchvill] failed to request an accommodation because [her] erratic attendance record made it

impossible for [her] to perform the essential functions of the job." *Jovanovic*, 201 F.3d at 899. "Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, [s]he is usually unable to perform [her] job." *Id.*; *accord Basden*, 714 F.3d at 1037 ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance. A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes."); *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 684-85 (7th Cir. 2017) (same). The undisputed evidence shows that Starchvill's erratic attendance record prevented her from performing essential job functions as a Deputy Sheriff, which included "hav[ing] custody and care of the courthouse and jail of . . . her county." 55 ILCS 5/3-6017. Like in *Whitaker*, Starchvill "does not provide any evidence that attendance was not an essential function of the job." 849 F.3d at 685.

In addition to the lack of evidence that Starchvill was otherwise qualified to perform essential job functions for purposes of the second element of her claim, Starchvill has not produced evidence that she was terminated because of a disability for purposes of the third element. The undisputed evidence instead supports that Starchvill's termination was based on her violation of the Last Chance Agreement, which in turn resulted from her failure to perform the essential job function of regular attendance. Courts routinely find that unless an employee makes a showing of pretext, terminating an employee who "fail[s] to meet her

employer's legitimate expectations" set forth in a last chance agreement does not violate the ADA. *Ames v. Home Depot U.S.A., Inc.*, 2009 WL 4673859, at *13 (N.D. Ill. Dec. 2, 2009), *aff'd*, 629 F.3d 665 (7th Cir. 2011) (collecting cases). And Starchvill has made no showing of pretext here. Starchvill's minor disputes with characterizations of her behavior in the original Merit Board complaint (*see* R. 37 at 7) are insufficient to support a finding that the Merit Board's "preferred reason for [Starchvill's] termination was pretextual." *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003). Accordingly, this Court grants summary judgment on Starchvill's ADA discrimination claim. *See, e.g.*, *id.* (affirming summary judgment on ADA discrimination claim where there was no evidence "which would tend to prove the proffered reason was factually baseless, not the actual motivation for the discharge, or insufficient to motivate the discharge").

## 2. Failure to Accommodate.

Turning to Starchvill's failure-to-accommodate claim, "[t]o survive [a] motion for summary judgment on [that] claim, [Starchvill] need[s] to present evidence that, if believed by a trier of fact, would show that (1) she is a qualified individual with a disability; (2) [her employer] was aware of her disability; and (3) the [employer] failed to reasonably accommodate that disability." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009). In support of her claim, Starchvill makes a cursory argument that "Defendants failed to provide reasonable accommodations to Plaintiff for her migraine headaches and instead used

Starchvill's disability to discipline and ultimately terminate her for absences caused by medical need." R. 37 at 16.

Again, however, "the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic*, 201 F.3d at 899. As the Seventh Circuit explained in *Reeves ex rel. Reeves v. Jewel Food Stores*, a case relied on by Starchvill herself, it is only "[o]nce an employee requests a reasonable accommodation," that "the employer must . . . engage in a flexible, interactive process to identify the necessary accommodations." 759 F.3d 698, 701 (7th Cir. 2014). "Where the employee does not provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee." *Id.* at 702.

Here, Starchvill has produced no evidence that she ever requested an accommodation for her migraines or provided sufficient information to the CCSO to determine such an accommodation. Instead, Starchvill merely points to her deposition testimony that defendants never affirmatively "talk[ed] to [her] about potentially going on disability" or "ask[ed] [her] what the department c[ould] do to help [her] alleviate the chronic migraines." R. 44 ¶ 64; R. 30-3 at 57. In the absence of evidence that Starchvill requested accommodations from defendants, her failure to accommodate claim cannot survive summary judgment. *See, e.g.*, *Reeves*, 759 F.3d at 702 (where "[t]here was no discussions of accommodations" among the plaintiff and defendant regarding the specific disability at issue, summary judgment was appropriate on failure-to-accommodate claim).

## V.      Sex Discrimination under Title VII and § 1983

### A.      Statute of Limitations for Title VII Claims

As with Starchvill's ADA claims, defendants first argue that Starchvill's Title VII sex discrimination claim is time-barred. Under Title VII, like under the ADA, a charge of discrimination must be filed within 300 days of the unlawful employment practice. 42 U.S.C. § 2000e-5(e). But unlike Starchvill's ADA claims, which cover a longer period of time, Starchvill's Title VII claim focuses on her termination. In cases alleging discriminatory termination under Title VII, "a cause of action accrue[s] when the employee [i]s notified of the alleged discriminatory discharge and not when the employee [i]s terminated." *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994); *see also Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) ("In discriminatory discharge cases, the plaintiffs' injury coincides with the decision to layoff the plaintiffs, not the actual termination date. . . . [T]he date of the unlawful employment practice is when a final, ultimate, [and] non-tentative decision was made for which the employee receives unequivocal notice.").

Here, Starchvill received unequivocal notice of her termination on April 28, 2016, when the Merit Board issued its decision terminating her effective July 24, 2015. R. 38 ¶ 15; R. 30-10 at 9. Starchvill filed her EEOC charge less than 300 days later, on February 8, 2016. The Court therefore rejects defendants' argument that Starchvill's Title VII claim is time-barred.

**B.     Merits of Title VII and § 1983 Claims[3]**

Turning to the merits of Starchvill's sex discrimination claims, the Court notes at the outset that Starchvill's discussion of direct and indirect evidence of discrimination is misplaced. The Seventh Circuit in *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760 (7th Cir. 2016), held "that in employment discrimination cases, district courts must 'stop separating direct from indirect evidence and proceeding as if they were subject to different legal standards.'" *Mourning*, 868 F.3d at 570 (quoting *Ortiz*, 834 F.3d at 765). Rather, "[t]he ultimate question in an employment discrimination case is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Mourning*, 868 F.3d at 570-71. A plaintiff has "the initial burden of establishing a *prima facie* case," which requires her to "present[ ] evidence that would permit a reasonable factfinder to conclude that she was fired because of her sex." *Id.* at 571.

Here, Starchvill has presented no such evidence. Rather, defendants have presented ample evidence supporting that Starchvill was fired because of her pattern of unauthorized absences. In particular, Starchvill has failed to present any evidence permitting a factfinder to conclude that "similarly situated employees outside of her protected class were treated more favorably by the employer"—an element of her *prima facie* case. *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). "To be similarly situated, another employee

---

[3]     The standard for Title VII and § 1983 intentional sex discrimination claims is the same. *E.g.*, *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003).

must be directly comparable in all material respects. In determining whether employees are similarly situated, the plaintiff must show that he or she is similarly situated with respect to performance, qualifications, and conduct." *Derosena v. Gen. Bd. of Pensions & Health Benefits of United Methodist Church, Inc.*, 560 F. Supp. 2d 652, 666 (N.D. Ill. 2008).

Starchvill has not identified any comparator with similar qualifications and performance and a similar pattern of unauthorized absences who was treated more favorably. Starchvill's examples of men being treated more favorably all involve different circumstances—*i.e.*, being late on certain unidentified occasions and being given better hours. R. 38 ¶ 33; R. 44 ¶ 67. At her deposition, Starchvill had no knowledge as to these comparators' leave and attendance issues. R. 38 ¶ 34. Moreover, although more female Deputy Sheriffs than male Deputy Sheriffs were terminated for unauthorized absences between 2013 and May 31, 2016, across all CCSO positions, more men than women were terminated. R. 38 ¶ 31. Because Starchvill has not proffered a similarly situated male comparator or produced other evidence that would permit a factfinder to conclude that she was discriminated against based on her sex, defendants are entitled to summary judgment on Starchvill's sex discrimination claims. *E.g.*, *David*, 846 F.3d at 226 (summary judgment appropriate where comparators were not similarly situated); *Derosena*, 560 F. Supp. 2d at 666 ("self-serving, conclusory, and speculative statements" about comparators are "wholly deficient" and "insufficient to meet [plaintiff's] burden at summary judgment").

## VI.    Indemnification

Finally, the Court agrees with defendants that because no claim against the Sheriff survives summary judgment, Starchvill's indemnification claim against Cook County in Count VII fails. *See Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1104 (7th Cir. 2015) (the county is a necessary party to a federal suit only "as long as [the sheriff] remains party").

## Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment (R. 28).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: July 18, 2018